**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 17a0132n.06

**Case No. 15-6322**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Feb 28, 2017
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| TALLAKOY, LP; TALLAWAH, INC.; AKOYA GROUP, LTD.; JASON BEDASSE; GARTH MYERS; TALLAKOY GP, INC., | ) ) ) | |
| | ) | ON APPEAL FROM THE |
| *Plaintiffs-Appellees*, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| v. | ) | DISTRICT OF KENTUCKY |
| | ) | |
| BLACK FIRE ENERGY, INC.; BLACK FIRE MINING, LLC; GILL STEVEN BROWN, | ) ) | |
| | ) | O P I N I O N |
| *Defendants-Appellants,* | ) | |

BEFORE:     COLE, Chief Judge; DAUGHTREY and MOORE, Circuit Judges.

COLE, Chief Judge.   The parties entered into a Revenue Participation Agreement ("RPA") in which they agreed that any disputes arising from that contract would be resolved through an arbitration proceeding.  Plaintiffs-Appellees Tallakoy LP; Tallakoy GP, Inc.; Tallawah, Inc.; Akoya Group, Ltd.; Jason Bedasse; and Garth Myers filed a complaint on December 23, 2014, seeking to enforce an award they obtained in an arbitration proceeding. Defendants-Appellants Black Fire Energy, Inc.; Black Fire Mining, LLC; and Gill Steven Brown, (collectively, "Defendants" or "Black Fire"), filed a motion to dismiss the complaint on the ground that the award was invalid and unenforceable.  The district court construed the motion to dismiss as a motion to vacate the award and denied the motion as untimely.  Black Fire

thereafter filed a motion under Federal Rule of Civil Procedure 59(e) to vacate the judgment and under Rule 60(b) for relief from the judgment. The district court denied both motions. We reverse and remand for further proceedings consistent with this opinion.

## I. BACKGROUND

### A. The Parties Form a Contract

Tallakoy LP; Tallakoy GP, Inc.; Tallawah, Inc.; and Akoya Group, Ltd., (collectively, "Plaintiffs" or "Tallakoy"), are investment companies. Jason Bedesse and Garth Myers are principals and operators of Tallakoy. In May 2012, Tallakoy invested in a mining operation in Pike County, Kentucky, known as Heller Mine. Tallakoy purportedly made the investment based on its review of promotional materials distributed by Black Fire. Nicholas Stodin, as signatory for Black Fire Energy, Inc., and Bedasse and Myers, as signatories for Tallakoy, entered into the RPA. The RPA included an arbitration clause in § 7.2:

> Any dispute arising from this Agreement that cannot be resolved by the Parties themselves shall be settled by binding arbitration by an agreed upon arbitrator or, alternatively, by a panel of three arbitrators in the event the parties are unable to agree on one arbitrator. The arbitration will be conducted in Kentucky in accordance with the rules of the American Arbitration Association. Any judgment rendered by arbitration shall be considered as final and binding and may be entered into the Kentucky courts having jurisdiction.

(*Tallakoy II* RPA, R. 13-3, PageID 167.)

### B. *Tallakoy I*

In June 2013, Tallakoy sued Black Fire, "seeking compensatory, liquidated and punitive damages, as well as injunctive relief." (*Tallakoy I* Compl., R. 1, PageID 5−6.) Tallakoy alleged that Black Fire "induce[d] [Tallakoy] to invest nearly $1,000,000 into a sham eastern Kentucky mining operation [Heller Mine], owned and operated by [Black Fire, which] . . . then misapplied the investor funds to other operations and for [Black Fire's] own personal enrichment." (*Id.*) Black Fire moved to dismiss the complaint on the ground that RPA § 7.2 required the dispute to

be resolved by arbitration. On October 29, 2013, the district court granted Black Fire's motion, thereby dismissing *Tallakoy I* for lack of subject matter jurisdiction. The court directed the parties to arbitrate the dispute under the RPA.

Sometime thereafter, Tallakoy engaged a single arbitrator who conducted an arbitration proceeding concerning the parties' dispute without the participation or involvement of Black Fire. The arbitrator issued an award ("the Award") in Tallakoy's favor on September 23, 2014.

On October 24, 2014, Tallakoy filed a motion in *Tallakoy I* to enforce the Award. Stodin claimed that he, and hence Black Fire, first learned of the arbitration proceeding and the Award on October 27, 2014. Stodin says he contacted the American Arbitration Association ("AAA") to determine whether it had any record of an arbitration between Tallakoy and Black Fire, given that the RPA required any arbitration to be conducted in accordance with the rules of the AAA. On November 21, 2014, Stodin, through his agent, filed a notice in the district court stating that the AAA had no record of an arbitration proceeding between Black Fire and Tallakoy.

On December 19, 2014, the district court denied Tallakoy's motion to enforce the Award, noting it no longer had jurisdiction over the dispute because the case had been administratively closed. The court suggested that Tallakoy file a new complaint and seek enforcement of the Award in that case.

### C. *Tallakoy II*

Apparently in furtherance of the district court's suggestion, Tallakoy filed a complaint, with the Award attached, to enforce the Award on December 23, 2014. On March 4, 2015, Black Fire moved to dismiss the complaint, arguing that "the award that Plaintiffs seek to enforce was knowingly obtained in direct violation of the Parties' arbitration agreement, and therefore is invalid and unenforceable." (*Tallakoy II* Mot. to Dismiss, R. 13-1, PageID 107.)

The district court denied Black Fire's motion, which it construed as a motion to vacate, finding "[w]hatever the merits of Black Fire's allegations, they come too late." (*Tallakoy II* Order, R. 21, PageID 235.) Black Fire then moved to alter or amend the decision and to vacate the judgment under Rules 59(e) and 60(b) on the basis that the district court erred in its determination of the date by which Black Fire had to challenge the Award. Black Fire also argued that the Award is invalid because it violates the terms of the RPA, the court's order to arbitrate in *Tallakoy I*, the AAA rules, and the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–16. The district court denied that motion on October 22, 2015.

This appeal followed.

## II. ANALYSIS

### A. Standard of Review

Black Fire appeals the district court's denial of its motions under Rules 59(e) and 60(b). We review the denial of a Rule 59(e) motion for abuse of discretion, reversing only when the district court (1) relies on clearly erroneous findings of fact, (2) improperly applies the law, or (3) uses an erroneous legal standard. *Nolfi v. Ohio Ky. Oil Corp.*, 675 F.3d 538, 552 (6th Cir. 2012); *Intera Corp. v. Henderson*, 428 F.3d 605, 619–20 (6th Cir. 2005). A Rule 60(b) motion allows the court to "relieve a party or its legal representative from a final judgment, order, or proceeding" in cases where there has been

> (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b). "We review the district court's decision on a Rule 60(b) motion under the same [abuse of discretion] standard." *Burrell v. Henderson*, 434 F.3d 826, 831 (6th Cir. 2006).

## B. Timeliness

The FAA requires a party to challenge an arbitration award "within three months after the award is filed or delivered." FAA § 12. The FAA does not define "filed" or "delivered." However, the AAA Rules, which the parties agreed to follow in their RPA, provide that:

> Parties shall accept as notice and delivery of the award the placing of the award or a true copy thereof in the mail addressed to the parties or their representatives at their last known addresses, personal or electronic service of the award, or the filing of the award in any other manner that is permitted by law.

Am. Arb. Ass'n Com. Arb. R. & Mediation Proc. R. 49, available at https://www.adr.org/aaa/faces/rules/searchrules/rulesdetail?doc=ADRSTG_004130 ("AAA R. 49").

Tallakoy argues that there are six possible dates for when the Award was "filed or delivered," all of which would make Black Fire's March 4, 2015 challenge untimely, assuming Black Fire first challenged the Award in the motion to dismiss filed on that date. Black Fire argues that December 23, 2014, when Tallakoy filed its complaint in *Tallakoy II* and attached a copy of the Award, constitutes the "start date" under the FAA and the AAA rules and thus is the appropriate date to begin Black Fire's three months to contest the Award. If Black Fire is correct, its March 4, 2015 challenge to the Award was timely filed.

We first address the three dates considered by the district court and then address the other dates proposed by Tallakoy.

No. 15-6322, *Tallakoy, et al. v. Black Fire, et al.*

### i. September 23, 2014

#### 1. Filing

The district court determined that Black Fire's time to challenge the Award actually began to run on September 23, 2014, when the arbitrator issued the Award. The district court reasoned that FAA § 12's reference to "filed" means the date on which the Award was issued. Thus, in the district court's view, the Award was filed on the date it was issued. As noted, the FAA does not define what it means for an arbitration award to be filed or delivered.

The district court's determination that "filed" means "issued" does not comport with the plain language of FAA § 12. If "filed" always means "issued," then the phrase "or delivered" would be superfluous because an award would always be "filed" immediately upon issuance and there would be no need for "delivery." *See Bennett v. Spear*, 520 U.S. 154, 173 (1997) ("It is the cardinal principle of statutory construction that it is our duty to give effect, if possible, to every clause and word of a statute rather than to emasculate an entire section.") (internal quotation marks and alterations omitted); *see also Eagle Energy, Inc. v. Dist. 17, United Mine Workers of Am.*, 177 F.R.D. 357, 358 (S.D.W.Va. 1998) ("Nor would we be justified in excising 'delivered' from the statute."). If Congress meant for the three-month period to commence once an award is issued, it knew how to say that. *See Bennett,* 520 U.S. at 173. Therefore, it runs counter to principles of statutory interpretation to find that the issuance date, when there is no other evidence of filing, is automatically the date on which the award was filed.

The district court relied on three cases to support the proposition that "filed" always means "issued." However, these cases do not change the statutory legal analysis. None of them analyze the definition of "filed" or explain why the court should consider the date of issuance as the date of filing. *In re Robinson*, the only precedent from this court cited by the district court,

devotes only two sentences to this issue. 326 F.3d 767, 772 (6th Cir. 2003). *Robinson* found that "[t]he arbitration award appears to have been entered on June 18, 1999, and to have become final fifteen days later, while Robinson's objection was not filed until February 11, 2000. Therefore, Robinson did not meet the three month deadline set forth in FAA § 12." *Robinson* did not identify which date it used. Rather it found that the period before the motion to vacate was filed was so long that the motion could not have been timely. The court did not analyze the significance of the issuance date or what filing meant. Therefore, *Robinson* does not support the conclusion that we should automatically consider the issuance date as the filing date.

The district court relies on two other cases, one from the Fourth Circuit and another from the District of Maryland, in its determination that an arbitration award is filed when issued. In *Taylor v. Nelson*, the Fourth Circuit used the date of issuance as the date it considered an award to have been filed. 788 F.2d 220, 225 (4th Cir. 1986). The court did not directly address why the issuance date should mean filing date and instead focused on reasons the three-month period should not run from the date of a motion for confirmation of the award.

Similarly, the district court relies on a case from the District of Maryland that found that the filing date was the issuance date. However, the court's inquiry in that case was focused on when a decision is considered final rather than whether issuance of an award is synonymous with filing under the FAA. *Parsons, Brinckerhoff, Quade & Douglas, Inc. v. Palmetto Bridge Constructors*, 647 F. Supp. 2d 587, 593 (D. Md. 2009).

There are at least two circuits that have not followed the Fourth Circuit's view. The Seventh Circuit determined that the issuance date was the filing date *but only* because the opposing party had not argued that the award was improperly filed or delivered on that date, "and the record would not support such an allegation." *Olson v. Wexford Clearing Servs. Corp.*,

397 F.3d 488, 492 (7th Cir. 2005). The Seventh Circuit's analysis indicates that where the issuance date happens to be the same as the filing or delivery date, the three-month period to challenge the award may begin on that date. However, the operative act to trigger this three-month period is the filing or delivery of the award, not the issuance alone. Further, the District of Columbia Circuit used the delivery date rather than the issuance date when determining when the three-month period began. S*ee Sargent v. Paine Webber Jackson & Curtis, Inc.*, 882 F.2d 529, 531 (DC Cir. 1989).

Other courts have disagreed with the district court's determination that the date of issuance constitutes the date of filing. *See, e.g., Adcock v. Halliburton Energy Servs., Inc.*, No. CIV.A. 2:04-CV-284BR, 2007 WL 496729, at *2 (S.D. Miss. Feb. 13, 2007) (refusing to use issuance date of an arbitration award as starting time to determine whether a motion to vacate was timely where Fifth Circuit had not ruled on the issue); *White v. Local 46 Metallic Lathers Union & Reinforcing Iron Workers of N.Y. City*, No. 01CIV.8277, 2003 WL 470337, at *4 (S.D.N.Y. Feb. 24, 2003) (stating issuance date, filing date, and delivery date separately, and using the delivery date to determine timeliness of a motion to vacate).

Here, the record reflects that the Award includes the signature of the arbitrator and a date of September 23, 2014, but there is no evidence that the arbitrator "filed" the Award or attempted to "deliver" it to Black Fire by any means on that date or any other date. Assuming that the Award was "issued" on September 23, 2014, there is no evidence that it was filed or delivered on that date, which is a requirement under the FAA.

### 2. Delivery

The district court alternatively found that September 23, 2014, was the date the Award was delivered. Though Tallakoy asserted that "[t]he Arbitrator issued an award against

Defendants and sent it to the parties pursuant to AAA Rule 49," it adduced no evidence of delivery and no such evidence appears in the record.

The finding that September 23, 2014, was the date the Award was delivered on the record before us is a clearly erroneous finding of fact because it wrongly assumes that because Tallakoy had received the arbitration award, the arbitrator (1) mailed the award to both parties and (2) that he mailed the award on September 23, 2014. There is no evidence in the record to support these assumptions. The lack of evidence is especially concerning in a case like this one where one party was absent from the arbitration proceeding, and possibly was not mailed a copy of the Award for that very reason.

It does appear that the district court is correct that the date an arbitration award is placed in the mail can be considered the date of delivery under AAA Rule 49, but the record does not support that the arbitrator mailed the Award to Black Fire on September 23, 2014. The district court's factual finding that September 23, 2014 was the date of delivery is in error, at least on the record developed thus far.

### ii. October 24, 2014

Initially, the district court determined that Black Fire's three months to contest the Award began to run on October 24, 2014, when Tallakoy filed the Award in *Tallakoy I*. However, the district court later correctly acknowledged that this was the wrong date. First, the Award was not filed in a "manner that is permitted by law," because the complaint in *Tallakoy I* had been dismissed and the case had been administratively closed. AAA R. 49. Second, Tallakoy's motion to enforce the Award was not served on the unrepresented parties, including Black Fire, so it was not "delivered" under the FAA on October 24, 2014.

### iii. December 23, 2014

On December 23, 2014, Tallakoy filed its complaint in *Tallakoy II* with a copy of the Award attached. This was a "filing of the award in any other manner that is permitted by law." AAA R. 49. This filing was properly served on all parties so it was also "delivered" under the AAA rules. This date can be considered the proper date to start Black Fire's three-month time period to challenge the Award under FAA § 12 assuming there is no earlier date upon which the period would begin.

### iv. Other dates suggested by Tallakoy

Tallakoy argues that it sent the Award to Black Fire and that it was delivered to various Black Fire representatives in November 2014. Specifically, Tallakoy argues that it mailed the Award to each of the defendants on November 13, 2014. It then relies on certified mail receipts signed by Alice Weed and Gil Brown, purportedly Black Fire representatives, to argue that the Award had been "delivered" to Black Fire. Further, Tallakoy argues that Stodin received the Award on October 27, 2014, and thus Black Fire either received the Award or at least knew about the Award by that date. The district court did not address or make any factual findings as to these dates. Accordingly, in the interest of justice, we remand this matter to the district court to determine whether there is evidence to support delivery or knowledge of the Award by Black Fire on these dates.

Given the inadequacy of the record to determine whether the Award was "filed or delivered" on September 23, 2014, we reverse the judgment of the district court and remand for further factual findings consistent with this opinion. As part of its consideration, the district court should consider whether filing or delivery of the Award occurred in November 2014, on

No. 15-6322, *Tallakoy, et al. v. Black Fire, et al.*

September 23, 2014, or on other asserted dates.  Consequently, we need not address whether the

Award is valid, because the issues of "filing" or "delivery" are not yet resolved.

### IV.  CONCLUSION

For the reasons stated above, we reverse the decision of the district court and remand for

further proceedings consistent with this opinion.